FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2010 NOV 24  PM 2: 17

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

| | |
|---|---|
| COURTNEY SOBCZAK, an individual, ) | |
| ) | Case No. |
| Plaintiff, ) | 3:10-CV-1080-J-99MMH-JBT |
| ) | |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| MEDICREDIT, INC., a Missouri ) | |
| corporation, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Courtney Sobczak, sues Defendant, Medicredit, Inc., and alleges:

### Introduction

1. This is an action for actual and statutory damages, and for injunctive relief, for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692 *et seq.*, and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 (FCCPA). Plaintiff additionally seeks an award of punitive damages under the FCCPA, as well as, costs and attorney's fees under the FDCPA and the FCCPA.

### Jurisdiction and Venue

2. Jurisdiction of this court arises under 15 U.S.C. §1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) as the Defendant transacts business here and the conduct complained of occurred here.

## Parties

4. At all times relevant to this Complaint, Plaintiff Courtney Sobczak was a "natural person obligated or allegedly obligated to pay any debt" who was residing in the County of St. Johns and State of Florida.

5. Defendant MediCredit, Inc. is a foreign business corporation organized and existing under the laws of the State of Missouri that is authorized to do business, and does business, in Florida and in this judicial district.

6. Defendant MediCredit, Inc. is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) in that, among other things, it held itself out to be a company collecting a consumer debt allegedly owed by the Plaintiff.

7. The acts of the Defendant alleged *infra* were performed by its employees acting within the scope of their actual or apparent authority.

8. All references to Defendant herein shall mean the Defendant or an employee of the Defendant.

## Common Factual Allegations

9. On or about December 28, 2009, Signet Diagnostics Imaging Services (North Florida), LLC (hereinafter "Signet") sent Ms. Sobczak an invoice for $323.00 (hereinafter the "Alleged Debt").

10. On or about January 6, 2010, Ms. Sobczak called her health insurance provider, UnitedHealthcare (United), to inquire about the Alleged Debt. Plaintiff spoke with a United Claims Specialist in United's Rapid Resolution Department. During this conversation, the United representative told Plaintiff that she did not owe the Alleged Debt because Signet had billed her for an unauthorized service.

11. During Plaintiff's January 6, 2010 telephone conversation with United, United placed Ms. Sobczak on hold and called Signet at (904)425-5412. Signet did not answer the phone, and United left Signet a voicemail which instructed Signet to cease billing Plaintiff for this unauthorized service. Additionally, on or about January 8, 2010, United mailed Signet a "Balance Billing Letter," a copy of which is attached to this Complaint as <u>Exhibit A</u>, telling Signet to stop billing Plaintiff for the Alleged Debt.

12. On or about March 22, 2010 at 12:40 p.m., two months after Plaintiff's telephone conversation with United, Defendant MediCredit, Inc. called Plaintiff and left a voicemail. In this voicemail, Defendant failed to identify itself as a debt collector and stated that Plaintiff should call Defendant in regards to "personal business." Plaintiff did not respond to this voice message because she believed it to be an erroneous call to her cell phone.

13. On or about March 25, 2010, Defendant left a second voicemail on Plaintiff's cell phone. Defendant stated that it was calling to collect the Alleged Debt. Plaintiff was upset, confused, scared, nervous, and inconvenienced by Defendant's attempts to collect the Alleged Debt.

14. During Plaintiff's March 25, 2010 telephone conversation with Defendant, Plaintiff told Defendant about the Balance Billing Letter United sent to Signet and the contents thereof, specifically, that Plaintiff does not owe the Alleged Debt and that Signet should cease efforts to collect the Alleged Debt from Plaintiff. After Ms. Sobczak told Defendant about the Balance Billing Letter, Defendant asked Ms. Sobczak to provide Defendant with documentation supporting her claim that she did not owe the Alleged Debt. Ms. Sobczak told Defendant she would fax a copy of the Balance Billing letter to Defendant.

15. Following Plaintiff's March 25, 2010 telephone conversation with Defendant, Plaintiff was confused, anxious and nervous. She felt sick to her stomach because she was being subjected to debt collection efforts by Defendant for a debt she did not owe and was told not to pay. Plaintiff lost sleep worrying about damage to her credit.

16. On or about March 26, 2010, Plaintiff, angered and confused about Defendant's collection efforts, had the Balance Billing Letter faxed to Defendant.

17. On or about March 29, 2010, at 8:15 p.m., while Plaintiff was vacationing with her family, Defendant called Plaintiff and left a voicemail demanding she return Defendant's call. Plaintiff was upset because she was trying to settle her children down for bedtime, and all she could think about was the damage to her credit, the Defendant's continued phone calls, and her inability to make them stop. That night, she was unable to sleep because she was nervous, anxious and sick to her stomach.

18. The next morning, on or about March 30, 2010 at 9:12 a.m., Ms. Sobczak called Defendant and asked if Defendant's records showed it received the Balance Billing letter Plaintiff faxed to Defendant on or about March 26, 2010. Defendant said that its notes showed that a fax was received, but did not show what had been received and did not include a copy of the facsimile. Ms. Sobczak reiterated that United had told Signet to stop attempting to collect the Alleged Debt, that the Balance Billing Letter which Plaintiff had faxed to Defendant showed Plaintiff did not owe the Alleged Debt to Signet, and requested that Defendant cease collection efforts. Defendant told Ms. Sobczak that it would continue its efforts to collect the Alleged Debt. Ms. Sobczak was exasperated, hurt and confused; she did not know what she could do to stop these illegal and unauthorized collection efforts.

4

19. On or about March 30, 2010 at 9:30 a.m., Plaintiff called United and told United that Defendant was continuing its collection efforts of the Alleged Debt.

20. On or about April 2, 2010, Ms. Sobczak learned that United sent another copy of the Balance Billing Letter to Signet; as before, the letter demands Signet cease billing Plaintiff for the Alleged Debt.

21. On or about April 5, 2010, Ms. Sobczak called the Federal Trade Commission (FTC) seeking guidance and closure as she was desperate for resolution. Plaintiff told the FTC representative all of the facts as alleged *supra*, specifically: (i) Plaintiff was billed $323.00 by Signet; (ii) Plaintiff contacted United in January to inquire about the bill; (iii) United told Plaintiff not to pay the Alleged Debt; (iv) United sent Signet a Balance Billing Letter demanding it cease collection efforts on the unauthorized charge; and (v) Defendant is now calling to collect the Alleged Debt despite Plaintiff explaining to Defendant that she does not owe the Alleged Debt and faxing the Balance Billing Letter to Defendant.

22. On or about April 5, 2010, at 3:29 p.m., after Ms. Sobczak's telephone conversation with a representative of the FTC, she called Signet. She painstakingly reiterated all of the facts to the Signet representative, specifically, that United sent a Balance Billing Letter United to Signet in January demanding Signet cease collection efforts, that Plaintiff was nonetheless being subjected to collections efforts by Defendant, that Defendant continued to pursue collection of the Alleged Debt notwithstanding her providing information confirming she did not owe the Alleged Debt.

23. On or about April 5, 2010 at 4:15 p.m., Signet called Ms. Sobczak. Signet represented to Plaintiff that it was *resubmitting* the claim to United and, in the meantime, would instruct that collections efforts cease while the claim with United was active.

24. Despite the April 5, 2010 telephone conversation with Signet, Defendant called Ms. Sobczak on the following dates:

   i. April 5, 2010 at 8:19 p.m. (left a voicemail to call the number left in the message);

   ii. April 7, 2010 at 4:42 p.m. (left a voice mail to call the number left in the message);

   iii. April 9, 2010 at 12:07 p.m. (left a voice mail to call the number left in the message;

   iv. April 12, 2010 at 7:09 p.m. (left a voicemail to call the number left in the message);

   v. April 14, 2010 at 10:55 a.m. (left a voice mail to call the number left in the message);

   vi. April 16, 2010 at 6:03 p.m. (left a voicemail to call the number left in the message); and

   vii. April 20, 2010 at 10:23 a.m. (left a voicemail to call the number left in the message).

25. On or about April 20, 2010 at 11:04 a.m., Ms. Sobczak called United. A United representative reassured Ms. Sobczak that she did not owe the Alleged Debt, Signet should not be billing Plaintiff, and Defendant should not be attempting to collect the Alleged Debt.

26. On or about April 20, 2010, Plaintiff called Signet but received a voice recording.

27. On or about May 20, 2010, Ms. Sobczak called Signet but again received a voice recording; she left a message asking for a return phone call, expressing her frustration, and informing the company that she had called the FTC.

28. On or about May 20, 2010 at 12:18 p.m., Defendant called Ms. Sobczak and left a voicemail requesting she return its call. That same day, at 2:25 p.m., Ms. Sobczak returned Defendant's phone call and inquired about the status of her case. Defendant reminded Plaintiff that it was attempting to collect a debt. During this call, Defendant acknowledged that it had received the fax from Plaintiff transmitting the Balance Billing letters and it had sent a communication regarding the Alleged Debt to Signet.

29. Subsequent to Ms. Sobczak's May 20, 2010 conversation with Defendant, Defendant's collection efforts seemingly stopped; during a five month period Plaintiff received no bills and no telephone calls. She felt hopeful, but remained anxious and nervous that Defendant would resume its collection efforts.

30. Then, Defendant sent Plaintiff a collection letter dated October 11, 2010 and postmarked October 20, 2010. A true and correct copy of the October 11, 2010 letter is attached hereto as Exhibit B and it is incorporated by reference herein.

31. Subsequently, on or about October 22, 2010, at 3:21 p.m., Defendant left a voicemail message on Ms. Sobczak's cellular phone. After listening to this voicemail, Ms. Sobczak felt ill; she did not understand why these calls had started again and she did not know how she could stop Defendant's collection efforts.

32. After this October 22, 2010, voicemail, Defendant's incessant and inappropriate collection efforts returned. Plaintiff received telephone calls and voicemails from Defendant on:

    a. October 26, 2010 at 8:56 p.m.;

 b. October 28, 2010 at 4:10 p.m.;

 c. October 30, 2010, at 12:06 p.m.;

 d. November 2, 2010, at 8:32 p.m.;

 e. November 6, 2010, at 5:49 p.m.;

 f. November 9, 2010, at 7:10 p.m.; and

 g. November 11, 2010, at 8:43 p.m.

33. On or about November 12, 2010, at 12:18 p.m., Ms. Sobczak called Defendant to ascertain why Defendant had resumed its collection efforts. During this telephone conversation, Defendant, after asking for Ms. Sobczak's phone number and last four digits of her social, stated that the telephone calls were in reference to collect a debt placed by Signet in the amount of $323.00. Defendant then asked if Ms. Sobczak would like to provide a credit card number to pay the Alleged Debt. Plaintiff told Defendant she would not pay the Alleged Debt because she did not owe it, that she had previously provided ample documentation showing that she does not owe the Alleged Debt, and asked Defendant to cease collection efforts.

34. Defendant, by engaging in the conduct set forth in great detail above, caused Plaintiff to become nervous, upset, and anxious. Defendant's continual efforts to collect the Alleged Debt, a debt which Plaintiff has proven to Defendant she does not owe, devastated Plaintiff and damaged her relationships with family and friends. Plaintiff has lost sleep worrying about Defendant's collection efforts and has spent an inordinate amount of time and effort trying to stop Defendant's illegal collection efforts.

### Count I – Violation of FDCPA

35. This is an action for actual and statutory damages brought as a result of Defendant's multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et*

*seq.* ("FDCPA") which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

36. Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraph 1 through 34 above.

37. Defendant violated the FDCPA by:

   a. harassing and/or abusing Ms. Sobczak by placing a telephone call to her without disclosing its identity in violation of 15 U.S.C. 1692d(6);

   b. willingly and knowingly making false representations to Plaintiff the character, amount, or legal status of a debt in violation of 15 U.S.C. § 1692e(2)(A);

   c. on information and belief, communicating information to any person, including a collection agency, information which Defendant knew or should have known to be false, including failing to communicate that a disputed debt is disputed, in violation of 15 U.S.C. § 1692e(8);

   d. failing to disclose a communication is from a debt collector trying to collect a debt and that any information obtained will be used for that purpose in violation of 15 U.S.C. § 1692e(11);

   e. knowingly and intentionally using unfair or unconscionable means to collect or attempt to collect any debt, including attempting collection of any amount where such amount is not expressly authorized by the agreement creating the debt in violation of § 1692f(1);

   f. failing to cease collection of the Alleged Debt after Plaintiff notified Defendant in writing and within the thirty-day period for such notifications, that she disputed the debt, in violation of § 1692g(b).

38. Because of Defendant's FDCPA violations, as alleged herein, Plaintiff suffered a substantial disruption in her daily routine thus warranting an award of emotion and/or metal anguish damages.

39. Moreover, Defendant's FDCPA violations caused Plaintiff to suffer, and Plaintiff will continue to suffer, injury to Plaintiff's feelings, personal humiliation, embarrassment, mental anguish and emotional distress, specifically, Plaintiff has become nervous, upset and anxious and her relationships with her family and friends have been damaged.

40. Further, Defendant's failure to appropriately respond to Plaintiff's facsimile transmitting United's Balance Billing letter to Defendant, despite admitting to Plaintiff that it received the facsimile, and Defendant's subsequent continuation of its harassment and attempts to collect on the Alleged Debt, show that Defendant did not take any reasonable measure, precaution, or procedure.

41. Defendant is liable to Plaintiff for Plaintiff's actual damages, statutory damages, and costs and attorney's fees.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against the Defendant:

> (a) Enjoining Defendant from any further illegal collection practices against Plaintiff;
> 
> (b) Awarding Plaintiff her actual compensatory damages;
> 
> (c) Awarding Plaintiff her emotional and/or mental anguish damages;
> 
> (d) Awarding statutory damages pursuant to 15 U.S.C. § 1692k;
> 
> (e) Awarding costs, disbursements and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and

(f) Awarding such other and further relief as may be just and proper.

### Count II – Violation of Florida Consumer Collection Practices Act

42. Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraph 1 through 34 above.

43. This is an action for injunctive relief and for actual and statutory damages, as authorized by Section 559.77 of the Florida Statutes.

44. Despite the fact that Defendant knew that it had no legitimate claim to collect on the Alleged Debt, Defendant, from about March 25, 2010, to the present date, has repeatedly made unlawful demand on Plaintiff for payment on the Alleged Debt and threatened to enforce its claim for payment in violation of Section 559.72(9) of the Florida Statutes.

45. Defendant has also harassed Plaintiff at Plaintiff's home by willfully communicating with Plaintiff frequently and regularly, in violation of Section 559.72(7) of the Florida Statutes

46. On information and belief, Plaintiff alleges that Defendant has made numerous false and misleading statements to a credit bureau, orally and in writing, indicating and implying that Plaintiff would not pay Plaintiff's just debts, without any disclosure to the recipients of the statements that the debt was and is disputed by Plaintiff, in violation of Section 559.72(5) and (6) of the Florida Statutes.

47. The acts of Defendant mentioned above were done and performed willfully, wantonly, and maliciously without regard to their effect on Plaintiff.

48. As a direct and proximate result of the conduct and acts of Defendant mentioned above, Plaintiff's excellent credit rating has been impaired, and Plaintiff has suffered severe pain

and distress of body and mind, and great mental anguish, embarrassment, humiliation, and shame, all to Plaintiff's damage.

49. Plaintiff has been required to employ the undersigned counsel to represent Plaintiff against the willful, wanton, malicious, and wrongful acts of Defendant mentioned above, and has agreed to pay counsel a reasonable attorney fee.

50. Plaintiff has incurred, and will continue to incur, additional expenses in the prosecution of this law suit, including court costs, telephone calls, travel expenses, and other expenses, all to Plaintiff's further damage.

51. Further, Defendant's failure to appropriately respond to Plaintiff's facsimile transmitting United's Balance Billing letter to Defendant, despite admitting to Plaintiff that it received the facsimile, and Defendant's subsequent continuation of its harassment and attempts to collect on the Alleged Debt, show that Defendant did not take any reasonable measure, precaution, or procedure.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against the Defendant:

(a) Enjoining Defendant from any further illegal collection practices against Plaintiff;

(b) Awarding Plaintiff the greater of her actual damages or statutory damages of $1,000;

(c) Awarding Plaintiff punitive damages as Defendant's conduct was willful;

(d) Awarding Plaintiff her costs of suit and reasonable attorney's fees; and

(e) Awarding Plaintiff such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable in this action.

Dated: November 24, 2010                    Respectfully Submitted,

VOLPE, BAJALIA, WICKES,
ROGERSON & WACHS

_____
Michael L. Duncan
Florida Bar No. 50946
Jamie W. Olinto
Florida Bar No. 85179
501 Riverside Avenue, 7th floor
Jacksonville, Florida 32202
(904) 355-1700
(904) 355-1797 (facsimile)